# BELKNAP,

## JANUARY TERM, A. D. 1857.

---

## McDougal *v.* Calef & al.

Where the undertaking by a guarantor is absolute, notice is unnecessary ; but where it is collateral merely, notice must be given within a reasonable time, otherwise the guarantor will be discharged ; unless he be not prejudiced by the want of notice.

The defendants gave to the plaintiff a guaranty stating in substance that they were acquainted with the principal, and reposing confidence in his honesty, would hold themselves bound for such goods as the plaintiff should entrust him with, provided he should sell them and abscond with the money or squander them. *Held*, that the guaranty was 'a conditional one, and that the defendants were entitled to notice. *Held*, *also*, that the defendants were not chargeable unless it should appear that the principal absconded with the money, or squandered the goods ; and that neglect to pay a balance did not show a squandering.

Assumpsit. The writ was dated August 11, 1853, and the case committed to an auditor who reported to the court the following state of facts appearing in evidence before him :

June 12, 1852, an instrument was signed by the defendants and given to Franklin Stevens, and by him delivered to the plaintiff prior to his purchase of the first bill of goods hereinafter mentioned, which was as follows :

" Salisbury, June 12th, 1852.

" Mr. McDougall of Merridith Bridge —

This may certify that we being acquainted with Frank Stevens and reposing good confidence in his honesty and the goods you

McDougal *v.* Calef.

may see fit to entrust him with we will hold ourselves good for provided he should sell them and abscond with money or squander them away and this shall your note against us.

DANIEL J. CALEF.

J. FELLOWS.

Given by us the 12th June, 1852."

The plaintiff, upon the receipt thereof, June 21, 1852, furnished Stevens with the first bill of goods, amounting to $176.87. Subsequently the plaintiff furnished Stevens with other goods, to the amount in all of $500.79. These goods were furnished Stevens upon the agreement that he should return the same or account for the same, or such part thereof as were not returned at the prices mentioned.

From July 15, 1852 to January 26, 1853, inclusive, the plaintiff received of Stevens and credited to him the sum of $360.51, of which $126.25 was cash, and the remainder goods returned and goods sold to the plaintiff. Stevens ceased peddling for the plaintiff in December, 1852. On the 27th day of January, 1853, there was due the plaintiff, from Stevens, upon general balance of the foregoing account, $140.28, which sum has ever since remained due and unpaid. January 26, 1853, when Stevens had sold all the goods entrusted to him, except those returned, and had ceased peddling for the plaintiff, the plaintiff called on him as to a settlement. Stevens then paid him $10, leaving due the aforesaid balance, and the plaintiff requested him to " come over and settle up his matters." The plaintiff had previously made similar requests. Early in April, 1853, the plaintiff called on the defendants, and informed them he had sold goods to Stevens upon their guaranty, and that as Stevens had failed to pay, he must look to them. In answer to their inquiry, he said the amount due from Stevens for said goods was " in the neighborhood of $100." About a fortnight after, the plaintiff came to the defendants and said he must call on them for what Stevens was owing him. The defendants denied their liability and declined to pay any thing. The exact sum due was n ' stated at this interview. Until the first above named inter-

view in April, the defendants were not informed by the plaintiff that he had the foregoing instrument or had trusted Stevens upon it. No other demands were made or notices given by the plaintiff. Stevens has not absconded. No evidence was offered that he had " squandered said goods away," other than the fact that he had sold the same and failed to account for them, and his pecuniary condition as hereinafter stated. In the fall of 1852 and early part of the winter of 1853 Stevens had attachable personal property to the amount of about $150 ; also debts due him for meat sold by him " when butchering," to the amount of between $200 and $300. In April, 1853, at the time of the first interview of the plaintiff with the defendants, he had converted into cash or disposed of about $110 worth of said property, so that it was not open to attachment. During the years 1853 and 1854 he collected about one half of the above debts due him, but the collections were mainly in 1853. In the fall of 1852 and early part of the winter of 1853, and afterwards, he held a mortgage received under the following circumstances: " Fellows and one Scribner had signed a note for $500 as sureties for one D. Stevens. D. Stevens gave Fellows a mortgage of a horse worth $100, and other personal property in Salisbury, to indemnify him to the amount of $300 against his liability as surety. In 1852 Fellows' property being attached on said note, he sold said mortgage to F. Stevens for $100 ; and subsequently Fellows and Scribner paid the note, each furnishing one half the amount due. D. Stevens was insolvent. In the early part of the winter of 1853 the horse was in New-London, but in the latter part of said winter the horse was taken to Massachusetts and sold by the person in possession of it. What became of the other mortgaged property did not appear. Since April, 1853, F. Stevens has not had any attachable property, other than the remainder of that before mentioned; and has had little or none since the summer of 1853. During the summer of 1853 Stevens was sick several times. The defendants objected to the reception of the aforesaid writing under the first count of the declaration, on account of an alleged variance

McDougal *v.* Calef.

in the omission of the words, "see fit to," and the insertion of the word "be," in said declaration. The defendants also objected to any proof of demands or notices by the plaintiff, because they say the declaration contains no proper allegations of the same. At the time of the transactions above mentioned the plaintiff resided at Meredith Bridge, and the defendants at Salisbury, and Stevens in Andover.

By agreement the cause was submitted to the determination of the court upon the report of the auditor.

*Pike & Barnard*, for the plaintiff.

I. By the terms of the guaranty, the guarantors were to be liable if Frank Stevens squandered the goods or sold them and ran away. The plaintiff relies upon the squandering of the goods as the foundation of his claim.

The case finds that Stevens sold the goods, and failed to account to the plaintiff for them; and, though requested to "settle up his matters," never had done so. This we suppose to be evidence of a sufficient squandering, within the meaning of the guaranty, to entitle the plaintiff to recover.

The guaranty was a continuing one. The defendants undoubtedly contemplated a longer duration of the business than a month, and expected to be liable for more than one bill of goods. *Whitney* v. *Groot*, 24 Wend. 84; *Bent* v. *Hartshorn*, 1 Met. 24; *Mason* v. *Pritchard*, 12 East 227; *Merle* v. *Wells*, 2 Camp. 413; *Douglass* v. *Reynolds*, 7 Pet. 113; 2 How. U. S. 426.

We think, also, that the guaranty is susceptible of an interpretation disclosing an absolute undertaking on the part of the guarantors.

The first part of the instrument is, "we will hold ourselves good for the goods you may entrust Frank Stevens with." The proviso limits this unqualified guaranty to two contingencies, and when the plaintiff brings himself within either of these, we see no reason why the undertaking is not just as absolute as if no proviso was mentioned; and if absolute, no notice is necessary. *Beebe* v. *Dudley*, 6 Foster 259.

II. But if the undertaking was collateral, "notice must be given within a reasonable time, otherwise the guarantor will be discharged from his liability, unless he is in no way prejudiced by want of notice." *Beebe* v. *Dudley*, 6 Foster 249. We say, *first*, there was a reasonable notice, and *secondly*, the guarantors have not suffered from the want of notice. Whether the notice to the defendants of the principal debtor's non-payment was reasonable or not, is a question of fact for the jury, upon considering all the attending circumstances. *Jackson* v. *Yendes*, 7 Black. 526 ; *Lowry* v. *Adams*, 22 Vt. (7 Wash.) 160. In the case at bar it is to be gathered from the facts reported by the auditor.

The guarantors made themselves liable only in two contingencies ; one, if Stevens should sell the goods and run away with the money ; the other, if he should continue in his business but squander them away ; and upon the happening of either of these events the writing should be to the plaintiff an equivalent for their note for whatever balance should be the plaintiff's due, leaving him fairly to infer that that sum was to be regarded as liquidated damages as between him and them. Upon general principles we cannot see why, after giving such a writing, directed to a particular individual — to a stranger — to benefit one in whose honesty they reposed "good confidence," that it was more the duty of the plaintiff to notify the defendants of his selling Stevens goods, than for the defendants to *take* notice that Stevens had bought them. The plaintiff, therefore, cannot reasonably be held to as strict a rule in regard to notice, as under some other circumstances.

Stevens must have had a reasonable time to settle up and pay the balance, before the defendants could be properly called on for any sum in arrears.

Was the delay from January 26, 1853, to the first of April, 1853, for this purpose unreasonable ? If the plaintiff had called on the defendants before he did, would they not have said, "You must give Stevens a reasonable time to settle the balance before calling on us." *Globe Bank* v. *Small*, 25 Maine 336 ; *Burt* v. *Horner*, 5 Barb. Sup. Ct. 487 ; *Allen* v. *Pike*, 3 Cush. 238.

The defendants were not prejudiced by the want of notice.

A neglect to notify does not imply injury as a matter of course. This must be shown by the guarantors affirmatively, and then they are discharged to the extent of the damage. *Rhett* v. *Poe*, 2 How. U. S. 457.

The case does not find that the defendants suffered any injury from any delay of the plaintiff to notify the defendants. Only about $110.00 of Stevens' property had been disposed of from the time he left off peddling until the defendants were notified, and that had been merely shifted from one kind of personal property to another. The case does not find that the defendants ever asked Stevens to pay, or that they tried to collect any thing of him.

The objection to the admission of the guaranty under the first count in the writ, if valid, does not apply to the second count.

*Alexander*, with whom was *Bellows*, for the defendants.

I. The contingencies upon which the defendants' liability rests have not yet arisen. The defendants are liable only " provided Stevens sell the goods and abscond with the money, or squander them away." It is not alleged that Stevens has absconded with money, and the fact that he has sold the goods and failed to pay McDougal the stipulated price, is no evidence of squandering. A failure to pay one's debts is a mere nonfeasance, while to squander is an actual misfeasance ; an active, positive wrong.

There is nothing in the instrument itself, nor in the evidence adduced, which, by implication, gives any peculiar meaning to the word *squander*. The instrument is intelligible and certain, giving the word its common and natural sense. This part of the defendants' agreement appears to be rather a guaranty of Stevens' ability and good judgment as a pedler, than a general undertaking to be responsible for his debts. No evidence was, nor indeed could have been, introduced to show that these parties, or either of them, understood that the word *squander* signified " fail to pay," for the law is careful to prevent words and phrases being forced from their proper and well established sig-

nifications to those of a radically different character.   2 Parsons on Cont. 6, note F.

In the construction of an instrument the plain, ordinary and popular sense of the terms used ought to prevail.   *Hawes* v. *Smith*, 3 Fairfield 429.

II. This guaranty is not a continuing one; it covers only the first advance of goods, which the auditor's report shows to have been fully accounted for.   *Rogers et al.* v. *Warner et al.*, 8 Johns. 119; *Wright* v. *Johnson*, 8 Wend. 513 ; *Whitney* v. *Groot*, 24 Wend. 82; *Smith* v. *Crittenden*, 6 Hills 543.

The consideration of the defendants' promise, though good in law, is not valuable, and nothing can be more just than that he who takes a security of this kind should be held to the exercise of some vigilance in regard to its terms, and that terms of doubtful import should be construed favorably to the party to whom no pecuniary advantage could accrue.   *Bright* v. *Benton*, 14 Barber 123 ; *Mauran* v. *Ballas*, 16 Peters 528; *Cremer* v. *Higginson*, 1 Mason 323 ; *White* v. *Reed*, 15 Conn. 454 ; *Nick* v. *Pagent*, 1 Cr. & M. 48 ; *Dick* v. *Crowder*, 10 S. & M. 71; *Melville* v. *Hayden*, 2 B. & Al. 545 ; 2 Camp. 413 ; *Ray* v. *Groves*, 6 Bing. 276 ; *Kirby* v. *Duke of Marl.*, 2 S. & M. 18 ; *Price* v. ———, 4 Taunton 600 ; *Evans* v. *White*, 5 Bing. 483 ; *Lord Arlington* v. *Myrick*, 2 Saund. 414.

III. But should this be held a continuing guaranty, then must this action fail for want of notice to the defendants of the acceptance of their offer to guaranty.   The necessity of such notice in cases of a continuing guaranty is supported by reason and authority.   The rule has been long established and repeatedly reäffirmed in the United States courts.   *Douglass* v. *Reynolds et al.*, 7 Peters 125.   When the guaranty is continuing, the fitness and justice of this rule is supported by strong considerations.   *Lee* v. *Dick*, 10 Peters 483 ; *Adams* v. *Jones*, 12 Peters 207 ; *Grier* v. *Rick*, 3 Dev. 62 ; *Hawes* v. *Nichols*, 9 Shep. 175 ; *Hill* v. *Calvin*, 4 How. Miss. 231 ; *Taylor* v. *Wetmore*, 10 Ohio 490 ; *Patterson* v. *Reed*, 7 Watt. & Serg. 144 ; *Norton* v. *Eastman*, 4 Greenl. 521 ; *Tuckerman* v. *French*, 7 Greenl.

115; 22 Maine 175; 14 Pick. 353; 5 Cush. 234; 11 Met. 365; 3 Cowen 438.

IV. The doctrine of the necessity of notice of the amount advanced, failure of principal, &c., within reasonable time, is fully recognized in *Beebe* v. *Dudley et al.*, 6 Foster 249.

The case at bar cannot be brought within the exception to the rule established in that case. The defendants, as appears from the facts reported by the auditor, were prejudiced by the delay in giving notice.

Stevens ceased peddling for McDougal in December. The plaintiff was aware of this, yet he neglected for four months at least to apprize the defendants that he had their guaranty, and that there was a balance in his favor which he should hold them accountable for. Under the facts reported it cannot be found that the defendants were in any way prejudiced by want of earlier notice.

V. The notice given was, in respects other than its unseasonableness, insufficient, and not what the law contemplates. The defendants were entitled to know the amount of their liability. "In the neighborhood of $100," was too indefinite to charge them with any sum.

EASTMAN, J. The contract upon which this suit was brought was to pay the plaintiff for such goods as he should let Stevens have, provided he should sell them and abscond, or should squander them. The goods were put into the hands of Stevens to be sold about the country, upon the agreement between him and the plaintiff that he should return the same, or account for them to the plaintiff; and they were charged to Stevens upon the plaintiff's books.

The contract of the defendants was not to pay for the goods in the first instance; nor does it go to the extent of a guaranty to pay for the same in default of payment by Stevens, but the agreement by them was to pay for the goods in case Stevens should abscond with the money received for the sales, or in case he should squander the goods. It was in effect a guaranty for the honesty of Stevens and for ordinary good management in the

---
---

sale of the goods, and for nothing more. Can then the defendants be holden upon the facts stated ?

A guarantor, in all ordinary contracts of liability by him, warrants the solvency of his principal and the payment of the debt in case of his default ; and where his undertaking to pay is absolute, notice to him of the failure of his principal to pay is unnecessary. His liability is fixed without demand or notice. *Butler* v. *Wright,* 20 Johns. 367 ; 3 Kent's Com. 124 ; *Breed* v. *Hillhouse,* 7 Conn. 523 ; *Cooper* v. *Paige,* 11 Shep. 73.

But where the undertaking is only collateral, notice must be given to the guarantor within a reasonable time ; or it must appear that the situation and circumstances of the parties are such that no injury has resulted to the guarantor from the want of notice. The object of notice is to inform the guarantor that he is relied upon for payment, and it should be given whenever it would be of any advantage for him to have it, that he may secure himself against loss. *Oxford Bank* v. *Haynes,* 8 Pick. 423 ; *Norton* v. *Eastman,* 4 Greenl. 521 ; *Babcock* v. *Bryant,* 12 Pick. 133 ; *Howe* v. *Nichols,* 9 Shepl. 175 ; *Cannon* v. *Gibbs,* 9 Serg. & Rawle 202.

Where notice is required, it should be given within a reasonable time. It is not necessary to be given with the promptness and precision required to charge an indorser of a promissory note, but the holder should not delay so long as to cause injury to the guarantor. Chitty on Bills 264 ; *Nicholson* v. *Gouthit,* 2 Black. 612 ; 3 Starkie Ev. 258, 650 ; *Bank* v. *Haynes,* 8 Pick. 423 ; 2 Taunton 206.

This contract or guaranty by the defendants was a conditional one ; *Beebe* v. *Dudley,* 6 Foster 249 ; and the defendants were entitled to notice. It was given in June, 1852, and the last parcel of goods was delivered to Stevens by the plaintiff in September following, and the last money paid by Stevens to the plaintiff was in January, 1853. No notice was given to the defendants that the plaintiff would look to them, till April, 1853. Had notice been given in January, the debt could have been secured on Stevens' property, but it probably could not have been in

McDougal *v.* Calef.

April; and the authorities would seem to show that the defendants in such a case would be discharged for the want of seasonable notice.

But it is not necessary to place our decision upon that ground; neither is it necessary, in the view which the court have taken of the case, to consider whether this was a continuing guaranty; nor whether the plaintiff was bound to notify the defendants that he accepted it; nor is it necessary to determine the questions raised upon the declaration. The undertaking by the defendants was to pay for the goods in case Stevens should sell them and abscond with the money, or should squander the goods. There is no general or absolute liability embraced in the terms of the contract, and the defendants were to be answerable only upon the two provisos stated.

As to the first of these conditions, the report of the auditor finds that Stevens has not absconded; and as to the second, the only evidence of importance, as it strikes us, that the goods have been squandered, consists in the fact that Stevens has failed to pay a balance of $140.28, due the plaintiff on general account between them.

To squander is " to scatter lavishly; to spend profusely; to throw away prodigally; to waste." And a squanderer is a spendthrift, a prodigal, a waster. Such is the definition given to the term by lexicographers, and such its general acceptation. Probably the defendants in using the word applied to it full as strong a meaning as that which we have stated. But however that may have been — and in construing the paper we are not to look to any such source for information — we are of opinion that there is nothing in the facts reported from which a legitimate inference can be drawn that Stevens squandered these goods. There is nothing differing from the ordinary case of a failure to pay a debt. No evidence of fraud, dishonesty or prodigality; neither of which can be inferred from mere non-payment.

The plaintiff founds his action upon this contract, and a recovery can only be had upon a special declaration. To sustain such a declaration he must show, either that Stevens absconded

with the money, or that he squandered the goods ; and as the auditor finds neither of these facts in favor of the plaintiff, and the circumstances reported do not in our opinion establish either, there must, according to the agreement of the parties, be

*Judgment for the defendants.*